UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_RICKEY [LEE] HAWTHORNE,_

(Enter above the full name of the plaintiff(s), including prisoner number, in this action. If you cannot list all plaintiffs in the space provided, please write "see attached" and list all names on an additional page.)

v.

_MICHIGAN DEPARTMENT OF CORRECTIONS,_
_MIKE WILKINSON, AKA, MICHAEL WILKINSON,_
_JAMES SCHIEDNER,_
_ROBIN GILBERT._

(Enter above the full name of the defendant(s) in this action. If you cannot list all defendants in the space provided, please write "see attached" and list all names on an additional page.)

FILED - GR

April 14, 2025 2:50 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW  SCANNED BY: ___ /___

1:25-cv-416
Phillip J. Green
U.S. Magistrate Judge

## COMPLAINT
### (Print Clearly)

I. **Previous Lawsuits**
   **CAUTION:** The Prison Litigation Reform Act has resulted in substantial changes in the ability of incarcerated individuals to initiate lawsuits in federal courts without prepayment of the civil action filing fee. Accurate and complete responses are required concerning your litigation history. Generally, a plaintiff's failure to accurately and completely answer the questions set forth below will result in denial of the privilege of proceeding _in forma pauperis_ and require you to pay the entire $405.00 filing fee regardless of whether your complaint is dismissed.

   A.   Have you ever filed a lawsuit while incarcerated or detained in any prison or jail facility?   Yes ☒   No ☐

   B.   If your answer to question A was yes, for each lawsuit you have filed you must answer questions 1 through 5 below. Attach additional sheets as necessary to answer questions 1 through 5 below with regard to each lawsuit.

   1.   Identify the court in which the lawsuit was filed. If it was a state court, identify the county in which the suit was filed. If the lawsuit was filed in federal court, identify the district within which the lawsuit was filed.
   _UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN, Hawthorne v. Caruso, et al; Case# 2:06-cv-14011-BAF-SDP._

   2.   Is the action still pending?      Yes ☐   No ☒
        a.   If your answer was no, state precisely how the action was resolved: _Dismissed Until I pay full filing fee._

   3.   Did you appeal the decision?      Yes ☒   No ☐

   4.   Is the appeal still pending?      Yes ☐   No ☒
        a.   If not pending, what was the decision on appeal? _Upheld Dismissal Until I pay the full filing fee._

   5.   Was the previous lawsuit based upon the same or similar facts asserted in this lawsuit? Yes ☐   No ☒
        a.   If so, explain: _N/A_

- 2 -                                        (W.D. Mich. Form – Last Revised: September 2021)

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN

Rickey Hawthorne, #180295

vs.

Michigan Department of Corrections,
et al..

I. Previous Lawsuits continues:

1. Wayne County Circuit Court; Hawthorne v. Mervyns
   Dearbon Michigan Store,et al;
   Case # ?able
2. NO.
   a. Defendant Mervyns Dearborn Michigan store
      had case transferred to US District Court,
      E.D. Mich. and settled for $1,500; Case # 2:04-cv-75004
3. NO; VAR-MKM.
4. NA,a. Case settled.
5. NO,    a. NA

---

HAWTHORNE V. ACCESS SECUREPAK, et al;
1. 60th District Court of Muskegon; Case # 23-178593-GC
2. NO, but have errors committed by court
   to reopen, e.g.,violated mailbox rule of the
   State and dismissed, but have not taken
   any recourse because of my disabilities.
3. NO.
4. NO, no appeal had.
5. NO; NA.

---

The three cases listed are cases I filed after I returned
to prison with the MDOC in the year 2004, so at this time
it's difficult for me to remember any more States cases at
this time, and the michigan State courts Administrator
and the michigan Attorney General denied my request for

2A

a record search for possible cases pursuant to the Michigan Freedom of Information Act, which prisoners are precluded from.

Now, as to cases I filed in federal court while "incarcerated" or detained in any prison or jail," I have listed the cases that was provided to me from the U.S. District Court for the Eastern District of Michigan; I donot remember filing most of them; and I cannot even began stating how the cases were resolved, but believed summary judgment for defendants in each case; and the list is as follows:

1. Hawthorne v. Vasbinder, et al; U.S. District court for Eastern District of Michigan; Case # 2: 04-cv-74824-AC.
2. No, a. Summary Judgment and or dismissal for defendant(s).
3. I donot remember appealing
4. No case pending in appeals court, and believe no appeal taken.
5. Believe summary judgment granted for defendant(s); if appealed; not similar, NA.

1. Hawthorne v. Caruso, et al; U.S. District court for the Eastern District of Michigan; Case # 2:06-cv-14011-BAF-SDP; which is the first case listed on Page 2.
2. ——— No, a. Dismissed —— until I pay full filing fee.
3. Yes.                              SEE ON PAGE 2 OF Complaint.
4. No, a. Upheld lower court decision.
5. No, NA.

1. Hawthorne v. Foltz; U.S. District court for the

2B

Eastern District of Michigan; Case # 2:87-cv-72361-GEW.

2. No, a. Do not remember, not even the case.

3. Do not remember.

4. No case pending in appeals court, and no appeal taken.

5. No; a. NA.

---

1. Hawthorne v. Trochill, et al; District Court, Eastern or Western District of Michigan; Case # 2:87-cv-72362-JF.

2. No, I donot remember.

3. I donot believe I appealed.

4. No appeal pending in Court of appeals, and no appeal taken.

5. No; a. NA.

---

1. Hawthorne v. Fu Bua & et al.; U.S. Dist, E.D. Mich.; Case # 2:95-cv-73786-JCO.

2. No, a. Summary Judgment or dismissal for defendants.

3. I donot believe I did.

4. No appeal pending in Court of appeals, a. No appeal taken.

5 No; a. NA.

---

1. Hawthorne v. USA; U.S. Dist, E.D. Mich; Case # 2:98-cv-71558-GER.

2. No, a. I donot remember this case.

3. I donot believe I did appeal.

4. No case pending in Court of appeals; Donot remember case.

5. No; NA.

---

1. Hawthorne v. Giles, et al.; Federal District Court, Eastern or Western District; Case # 5:96-cv-60274 BKH.

2. No; a. I donot remember this case.

3. I donot believe I appeal this case.

4. No appeal pending in Court of appeals; donot remember case.

5. No; NA.

2C

1. Hawthorne v. Straub; U.S. Dist Court, E.D. Mich.; Case # 2:99-CV-73238-PDB-VMM.
   2. No, summary Judgment or dismissal for defendant.
   3. I donot believe I appealed.
   4. No appeal pending in Court of Appeals, and no appeal taken.
   5. No, NA.

---

1. Hawthorne v. Straub, et.al.; U.S. District Court, E.D.- Michigan; Case # 5:96-cv-60309-BKH.
   2. No, a. Probably Summary Judgment or dismissal for defendants.
   3. I donot believe I appealed.
   4. No, a. summary Judgment or dismissal for defendants, if I appealed, upheld
   5. No. NA

---

1. Hawthorne v. Vieta, et al; U.S. District Court, E.D. Mich.; Case # 2:87-CV-71000 RED.
   2. No, a. Summary Judgment or dismissal for defendants, I believe because I thought I have not exhausted my grievances, but belatedly discovered I had.
   3. I donot believe I appealed.
   4. No appeal pending in Court of Appeals, and no appeal taken.
   5. No, a. NA.

---

1. Hawthorne, et al. v. Risinger; U.S. District Court For Western District of Michigan; Case # 2:88-cv-70155-LPz.
   2. No, Dismissed because, not being an attorney, I could not represent a Class.— This is what I remember.
   3. No, I donot think I did appeal.
   4. No, a. I donot believe I appealed the decision.
   5. No, a. NA

2D

1. Hawthorne v. Gerry, et al.; U.S. District Court For the Eastern District of Michigan; Case # 2:88-cv-70493-RED-LVM.
2. No, a. Summary Judgment or dismissal for defendants.
3. No, I don't believe I appealed.
4. No, a. Summary Judgment or dismissal for defendants upheld, if I appealed.
5. No, a. NA.

---

Although I do not remember much about most of the above federal cases, if anything at all, I do remember being tricked and forced on Psychotropic drug(s) of some kind that have me messed up with memory lost; irrational thought, losing touch with reality; and how I was forced into Duane Waters Hospital Psychiatric ward because I complained to the Michigan State Police about being forced on unnecessary Psychotropic drug(s), all during Periods of my federal court filings. I believe to this day that this unknown drug(s) caused me to suffer with Obstructive Sleep Apnea

I also remember having to write and complain to the federal court(s) in my cases how the defendants in my federal civil actions was preventing me from Prosecuting my cases, but nothing from the federal court(s) came about as a result of my complaints, not even under the all writs act (All Writs Act).

2E

II. **Parties**

A. Plaintiff(s)

Enter your name, place of confinement, address, and place of confinement during the events described in the complaint in the blanks below. Provide the same information for any additional plaintiffs. Attach extra sheets as necessary.

Name of Plaintiff _Rickey Hawthorne_

Place of Present Confinement _Muskegon Correctional Facility_

Address _2400 S. Sheridan Drive; Muskegon, Michigan 49446-6298_

Place of Confinement During Events Described in Complaint _Muskegon Correctional facility_

B. Defendant(s)

Complete the information requested below for each defendant in this action, including whether you are suing each defendant in an official and/or personal capacity. Provide the same information for each additional defendant. If there are more than six defendants attach extra sheets as necessary.

Name of Defendant #1 _Michigan Department of Corrections (MDOC)_

Position or Title _Penal institution_

Place of Employment _Michigan Department of Corrections is a Department of the State_

Address _206 E. Michigan Avenue; Lansing, Michigan 48933_

Official and/or personal capacity? _____

Name of Defendant #2 _Mike Wilkinson_

Position or Title _The MDOC's Health Unit Manager_

Place of Employment _Muskegon Correctional Facility_

Address _2400 S. Sheridan Drive; Muskegon, Michigan 49446-6298_

Official and/or personal capacity? _Official and personal._

Name of Defendant #3 _James Schiedner_

Position or Title _Warden of Muskegon Correctional Facility_

Place of Employment _Muskegon Correctional Facility_

Address _2400 S. Sheridan Drive; Muskegon, Michigan 49442_

Official and/or personal capacity? _Official._

Name of Defendant #4 _Robin Gilbert_

Position or Title _Statewide Offender ADA Coordinator_

Place of Employment _Michigan Department of Corrections_

Address _206 E. Michigan Avenue; Lansing, Michigan 48933_

Official and/or personal capacity? _Official._

Name of Defendant #5 _____

Position or Title _____

Place of Employment _____

Address _____

Official and/or personal capacity? _____

- 3 -                              (W.D. Mich. Form – Last Revised: September 2021)

III. **Statement of Claim**

State here the **facts** of your case. Describe how each defendant is personally involved. Include also the names of other persons involved, dates and places. **Do not give any legal arguments or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. **Do not include unrelated claims.** Use as much space as you need. Attach extra sheets if necessary.

## JUDICIAL NOTICE

Please take Judicial Notice that I suffer with some kind of Mental disability or a physical disability that causes me to suffer blackouts or memory lost, even while writing, that I suppose to be scheduled by the Michigan Department of Corrections outside independent medical service to have some type of gland test to possibly determine cause for the blackouts or memory lost episodes. I may suffer with both blackouts and memory lost, but all I know is that whatever it is it causes me to omit parts or complete sentences that I would have in my mind to write and thought I had written to discover later I did not; I would have in my mind to write the word, "or" but instead I would write the word, "of; or I might intend to write the compound word "didnot", but instead I would write the word, "did, and vice versa; and etc; etc;etc; so I request the court to please, if necessary, discern my claim(s) from the rest of the statements or the facts, and from my relief sought.

## CLAIM I

THE MICHIGAN DEPARTMENT OF CORRECTIONS IS VIOLATING MY RIGHTS UNDER THE AMERICANS WITH DISABILITY ACT AND ITS REGULATION AND THE REHABILITATION ACT AND ITS REGULATION BY ALTERING THE BUNKBEDS IN ITS PRISON CELLS AND ROOMS HAVING APPEND TO THE TOP AND BOTTOM BUNK A STEEL LADDER THAT BLOCKS ME FROM GETTING IN AND OUT OF MY ASSIGNED BOTTOM BUNK DENYING ME THE BENEFIT OF THIS SERVICE OR

(W.D. Mich. Form – Last Revised: September 2021)

ACTIVITY OF GETTING IN AND OUT OF MY BUNKBED EXCEPT I PAINFULLY STRUGGLE WITH CRAMPS AND ENDURE EXTREME PAIN GETTIN IN AND OUT OF MY BUNKBED:

1. I am a seventytwo (72) Years old prisoner and a qualified individual with disabilities. MY disabilities consist of three (3) pinched nerves in the vertebras in my back, pinched nerve(s) in MY neck, I suffer with a degenerated right hip, and I suffer with spurred knee(s). The pinched Nerves in MY back and MY spurred knees limits limits my major life activities of: (i) bending that includes me not being able to fully bend my legs back at the knees; (ii) standing, because sharp pain repeatedly attack my leg around the bottom of my left knee and causes me to nearly fall, and my muscles in my lower back and in my legs becomes weak, exhausted and fatigue and painful, and I would stumble; and (iii) walking, because to stand and walk are most times exhausting and causes me severe pain in my back and legs (my lower back and legs) and I would began having pain or some type of misery in the middle of my left knee like an irritable nerve, my left left knee goes out when sharp pains attack it around the

4A

bottom of it causing me to almost fall when using my cone, and at times the muscles in my leg weakens.

2. The Michigan Department of Corrections (MDOC) is a department and public entity of the state of Michigan and is subject to the Title I I Americans with Disabilities Act and its regulations, and the Rehabilitation Act and its regulations in that Michigan receives federal funds to its MDOC.

3. In the possession of the MDOC and its Bureau of Health Care Service (BHCS) and its Muskegon Correctional Facility (MCF) Health Care Service are my medical records, which includes a record of a Magnetic Resonance Imaging (MRI) that the MDOC had done on me at, I believe, the War Memorial Hospital in suite St. Marie, Michigan. The MRI show and evidences that I have and suffer with Pinched Nerves in 3-Vertebras in my back and some twisted Nerves or something in my lower back, and a second MRI done to me at Trinity Hospital in Muskegon, Michigan show Pinched Nerve(s) in my Neck. Moreover, X-Rays taken at, I believe, MDOC's Chippewa Correctional Facility in Kincheloe, Michigan on me that is in MDOC and its BHCS and it MCF Heath

4B

Care Service Possession show and evidences that I suffer with spurred knees and a deseverated right hip.

4. I am housed at MCF in a small furnished room/cell with a room-mate (bunky) that is non-mobility Compliance pursuant to ADA and RA regulation. I believe around the beginning of summer in 2023 MDOC directed the wardens at each of its Correctional Facilities to alter the bunkbed by appending steel ladders to the bunks. At MCF where I am housed the top bunk was lowered down to its original manufactured position so that the short ladder could be appended to the top and bottom steel mattress frame. The ladder was appended straight up—and—down to the top and bottom bunk about 1 and a half feet from the middle of the bunkbed, blocking me from swinging my legs in and out of the bottom bunk to set in the bunk and set out of the bunk without as much pain due to my disabilities described above;

5. To set out of the bottom bunk with the ladder hindering me I have to pull myself up the little that I can with a makeshift rope that I put on the bunkbed and raise my leg up and bend it back at the knee as far back as I can so to get it around the ladder. This is an

4C

extremely painful daily struggle for me getting my left leg around the appended bunkbed ladder so that I can get out of the bottom bunkbed, and it exhausts me and causes me to become inflicted with painful cramps to my legs, feet and toes, and it causes me to suffer with severe and extreme pain to my knees and the back of my left knee at the bone on the left side of the knee or whatever this part I call a bone is, and the pain from my left knee radiates up my leg to my hip and left side of my lower back crippling me.

6. I suffer with suppose prostate cancer, enlarged prostate, and maybe a bladder issue that causes me to urinate frequently at night, as evidenced by my MDOC medical record, so I have to get out of my bunkbed at least three(3) times a night after falling asleep to go to the restroom to urinate, and I am crippled and stumbling and struggling to get to my wheelchair that is kept outside my room/cell door;

7. Once out of the bunk I would stumble on my roommate (bunk) who would push me up against my

4D

desk and threaten to do me harm if I stumble on him again, and I would have to endure severe pain squeezing pass him, because the room/cell is so small. I try avoiding this with my currently bunky.

8. Getting into the bottom bunkbed is likewise a painful struggle, and whether I am getting into the bottom bunk or getting out of the bottom bunk I always endure pain to my neck having to bend my head and neck forward trissering pinched nerve pain, because the MDOC alteration of the bunkbed required lowering the top bunk. **See above Paragraph 4.**

9. I believe I have been using a cane to help me stand and walk for nine (9) years struggling to avoid having to use a wheelchair, and I believe I have been using a wheelchair for distance for four (4) years because the pinched nerves in my back and my spurred knees had gotten worst and begun limiting more of my major life activities and causing excruciating pains, which are currently aggravated each time I have to struggle in extreme pain to get my legs around the ladder that is

4E

appended to my assigned bunkbed with nuts and bolts, so that I can get in and out of the bunk.

10. I am in imminent danger of additional serious physical injuries, because I am now suffering with new extreme pain when I struggle to get my legs around the ladder, which is ongoing throughout the day and night. The pain is around the inside of my left leg between the leg and groin, and up into a disposable hernia that I have on my left side at the bottom of my stomach or pubic area, which makes it difficult to sit in my wheelchair at times. See above paragraph 9.

11. Defendant MDOC's cell/room furnishing Policy Directive ("PD") 04.07.110, ("STATE ISSUED ITEMS AND CELL/ROOM FURNISHING"), was amended after the ladder had been appended to my bunkbed for over a year that became ~~became~~ effective on October 28, 2024 to include providing "ladders to [prisoner] in double bunked cells. This PD provides the Corrections Facility Administration (CFA) with authority to exempt the ladder and or other furnishings from double bunked cells/rooms, but there

4F

is Nothing in the Paperwork, the "Offender ADA Reasonable Accommodation Request/Appeal-Response Form CSJ-563" dated 11/21/2024 that I receive from the Defendant MDOC's statewide ADA Coordinator, Defendant Robin Gilbert, in response to my "Offender ADA Reasonable Accommodation Request/Appeal form CSJ-562; that indicates that an exemption was sought So to remove the ladder from my assigned bunkbed, along with the desk used by my bunky that would allow me to bring my wheelchair into the room/cell for my immediate accessibility When Necessary.

12. On October 08, 2024, I wrote and submitted a "Health Care Request" to MCF Health Care service stating: "I have Problem getting out of bed with the bed with the ladder in the way Causing me Pain, and I stumbles all the time and my bunky (roommate) will not get out of the way. And the mattress is too thin or something and not only Problem From my back hurts, but mostly my hips."——The response I received from Registered Nurse Kathy Sherwood [KS22] of Health Care service was that "Health Care cannot do anything for the ladder on the bed, Your bunky]

46

or the mattress? ["You are scheduled with the MP for a CC ["Chronic Care"]. This can be discussed further at that time."] I received this response on october 10, 2024 because it was delivered to other Prisoners' room/cell.

13. On October 17, 2024, I wrote grievance Number MCF/2024/10/1000/28c. I stated in my grievance what Register Nurse Kathy Sherwood stated in her health care response to me that, in essence, health care cannot accommodate my disabilities. See above Paragraph 12; and I detailed my disabilities and my need for reasonable accommodation.——— My grievance was rejected at all three(3) steps without addressing the merit for "raising multiple issues in one grievance," although the issues are all related to my disabilities and what I stated to Health care service for which I am seeking reasonable accommodation. Defendant MDOC has, I believe, at least fourteen vague and illogical and inconsistent reasons to reject mine and other Prisoners meritorious grievances, and with the merit of my grievance being so clear and obvious, it constitutes evidence of deliberate indifference

4H

on the part of Defendant James Schiedner who could have addressed or had someone else address the merit of my step I grievance, rather than upheld the grievance coordinator's step I rejection of the grievance, and could have accommodated my disabilities.

14. On a date between October 17, 2024 and October 29, 2024 I spoke with Defendant Mike Wilkinson, aka, Michael Wilkinson, who is MCF's Health Unit Manager( HUM), regarding my disabilities and need for reasonable accommodations that included a special mattress to help relieve me of the pains to my back and hips that I suffer with when I try to sleep, and, I reminded Defendant Wilkinson of how he became very much aware of my disabilities and its documentations by MRI, Ultra-Sound, and X-Rays. Defendant Wilkinson stated that he is aware of my disabilities, but that it is now a custody issue that I have to take up with custody. I stated that that explains the response to my Health Care Request. See above paragraph 12. Also see above paragraphs 3-8 describing the suffering I'm enduring by disabilities

4I

that I spoke with Defendant Wilkinson about and adopt by reference hereto. And I also offered to show Defendant Wilkinson how swollen my left leg was.

15. On October 29, 2024, I filled out "Offender ADA Reasonable Accommodation Request/Appeal form, CSJ-562, setting forth my medically documented disabilities and need for a single-man cell and other accommodations and submitted to the worksite Offender-ADA Coordinator. I described in the form my disabilities and need for reasonable accommodations as I described in my statements and facts described in Paragraphs 3 through 8 and 14 above that I adopt by reference hereto;

16. On November 19, 2024 the workside offender ADA Coordinator, I believe name April McLaughlin; Defendant Mike Wilkinson; my PC, Mitchell Keys; and another prison staff official came down and stood a distant from my room/cell door looking into the room/cell. The door was open and I could hear

4J

this group discussing only the ladder that was append to my assigned bunkbed. I thought this group of prison officials had come to conduct my Ten (10) business days interview, but I later discovered from worksite offender ADA coordinator McLaughlin that an interview wasn't necessary because of my documented (medically documented) and obvious disabilities. However, on November 19, 2024 when this group pulled up in from of my room/cell door, Defendant Wilkinson came into the room toward me and stated, "Let me be straight," "You're not getting the top bunk raised," "You're not getting a special mattress," "the ladder stays on the bunk," and in no way will you be getting a single-man cell." I stated to Defendant Wilkinson that "I have seen healthy prisoners and prisoners with lesser disabilities than what I suffer with get a single-man cell." "And what do you have to do with my request for accommodation?" "You told me it was a custody issue?" As Defendant Wilkinson was walking away from me and out the room he

4k

stated, "Now you know." The group of prison officials left after Defendant Wilkinson left out the room/cell;

17. On November 20, 2024 I wrote a grievance on Mike Wilkinson, a defendant, which was grievance number MCF/2024/11/1113/28I setting forth what he had said to me on November 19, 2024, that he had told me at Health Care Service that my need for accommodation was a custody issue, but he spoke to me as it was up to him whether I get reasonably accommodated and that he had already made up in him mind that he was not going to accommodate me. This grievance was rejected on "No attempt to resolve", which is wrong because I did attempt to resolve my issue while he confronted me on November 19, 2024, and I had already written a Health Care Request on October 08, 2024 and its related grievance on the matter of my disabilities and need for accommodation, to have it rejected. See above paragraphs 12 and 13. The Grievance Coordinator's

4L

rejection of my step I grievance was upheld at step II by Defendant James Schiedner, the MCF warden, without addressing the clear and obvious merit, and the grievance was upheld at step III by staff that speak on behalf of the MDOC director, Heidi Washington.

18. At a period after November 21, 2024 and before December 03, 2024, I learned from the statewide ADA coordinator for Defendant MDOC and the worksite offender-ADA coordinator that Defendant Mike Wilkinson could have reasonably accommodated my disabilities, but refused to do so, leaving me to struggle and endure extreme pains to get my legs around the ladder that is append to my assigned bunkbed so that I can get in and out of bed, see above paragraphs 5 through 10, and leaving me tossing and turning in pain trying to sleep because of Defendant Wilkinson's refusal to provide me with an accommodating mattress.

19. These facts that are stated in above paragraph 18

4m

are indicated in the worksite Offender-ADA Coordinator's response, which states in the last two(2) lines under "Facility Response", in part, "Health Service was contacted and informed of the Prisoner's request." This explains why on November 19, 2024 Defendant Wilkinson was with the ADA group and why he made statements to me that indicated that he was refusing my reasonable accommodation request when he could have accommodated me, See above paragraphs 16 and 17, even if for some unconstitutional reason he would have to had Seek ~~sought~~ CFA authorization, first, to remove the ladder from my assigned bunkbed, and to move out the room/cell the second desk, after having moved my bunky. —The statewide Offender ADA-Coordinator's response states, "The coordinator['s] actions and referral for the Prisoner to follow up with ~~care~~ Health Care was and is the appropriate action and the proper avenue for the offender." The statements by both ADA Coordinators say to me that Defendant Mike Wilkinson did not tell the November 19, 2024 ADA Group what he had said to me that indicated

4N

Health care, Defendant Wilkinson's, refusal to accommodate me, in spite of the fact that my need for accommodation is obvious.

20. I appealed the November 21, 2024 ADA response made by the Statewide Offender ADA Coordinator, Defendant Robin Gilbert, to correct a statement she made referring me to the Security Classification Committee ("SCC"), where she advised the SCC that I made a request for review of my placement, when I did not request such review; explaining in my appeal that "a transfer would have to be in retaliation for [MY ADA] filing seeking accommodation and a single-man cell, because I have witnessed able body men [men with no disability] being given single-man cell at Muskegon Correctional Facility, as well as less[er] disabled prisoners (men)," and, there is an able-body prisoner with a single-man room/cell locking down the hall from me as of this date of March 26, 2025 for which I am continuing drawing up the above complaint.

21. The ladders that are appended to the bunkbeds

40

that includes my assigned bunkbed here at MCF does not go down to the floor; the first tier of only a 2-step ladder is to high to step up on, maybe about 2-feet high; even if a prisoner could step up on the first tier. he could only rest his foot there for a moment; because there is nothing to grab hold of to enable a prisoner to step up to the next tier so to get on his top bunk; and if a prisoner reaches over to grab on to his bunkbed shelve, he will become aware that the shelve may may tilt over and cause his television, cup of water or coffee, and other of his items that may be on the shelve to fall off, including the prisoner, himself my fall. For these such reasons a prisoner at MCF cannot use the ladder to climb up on his top bunk or to climb down off his bunk and avoid potential injury from falling. The ladders appended to the bunkbeds at MCF are fictitious and deceptive, and maybe a commission of fraud upon the federal court in the case of Gloves v. Rivas,

4P

2021 U. S. Dist LEXIS 47786 (E.D. Mich. March 15, 2021) and, or, Turner v. MDOC, 2023 U.S. App LEXIS 8080 (6th Cir., April 03, 2023) (UNPublished).

22. Defendant MDOC has a statewide P.D, which is P.D 04.06.160, ("Medical Details and special Accommodation Notice"), which explicitly provides for special Mattress to be issued by Health Care Service and Defendant Wilkinson to disabled Prisoners who are in need for a mattress accommodation, but Defendant Wilkinson who could have accommodated me with a special mattress refused to do so because of my disabilities; and this same statewide P.D is used to place Prisoners in rooms by themselves ("single-man-cell"), not only here at MCF, but at MDOC's Cotton Correctional Facility and other of Defendant MDOC's facilities, although the P.D is intentionally left vague on the matter, but its application on the matter is wide open and obvious.

23. I need the ladder that is appended to my assigned

42

bunkbed removed so that I can get in and out of my bottom bunk without suffering with the extreme pain that I suffer because of my disabilities and having to struggle to pull myself up and to raise and bend my legs at the knees to get it around ladder, which is a barrier here at MCF that serves no purpose but to cause me additional injuries and pain.

24. I need a single-man room (1) so that I donot have to continue suffering with excruciating pain ~~from~~ From having to squeeze pass a bunky to go out the room and to come into the room because of my disabilities and Defendant Wilkinson's and Defendant James Schiebner's refusal to accommodate me with a single-man-room, although these defendants could have; (2) so that I will not have to stumble onto a bunky and become assaulted and seriously injured from not being able to to defend myself because of my disabilities and Defendant Wilkinson's and Defendant Schiedner's refusal to accommodate my disabilities, although these

4R

defendants Could have; and ③ so that I can bring my wheelchair into the room so that I can have immediate access to it so that I do not have to struggle with stiffness and severe pain to get to it outside my assigned room door because of my disabilities and Defendant Wilkinson's and Defendant Schiedner's refusal refusal to accommodate my disabilities, although these defendants could have.

25. I need the top bunk raised up or a single bed so that I do not have suffer pain, I believe including head pressure and pain from having to bend my neck and head forward to avoid the top bunk.

26. I need a special mattress that will keep me from ~~unnecessary~~ Suffering unnecessary pain to my back and hips that keeps me tossing and turning all night and prevents me from sleeping through the night, and that would possibly keep me from stiffing up, especially in my legs, because of my disabilities; ~~and~~ but Defendant Wilkinson's ~~refusal~~ refuses to accommodate me with a special

45

mattress because of my disability.

27. Prisoners at MCF has been placed in rooms by themselves for years, for instance, a lesser or non-disable prisoner Name (last Name) Perry that was locking in the same 2-unit housing, in room 141 or 142, where I am housed before he was transferred to another of Defendant MDOC's correctional facility; and, there is prisoner Powell, inmate # 836559, who is currently locking in 2-unit, room #114, and has been locking by themselves for months. There may be other prisoners in 2-unit locking by themselves, and I was told by prisoners from the other five units that there are, or was, prisoners in these unit that had no disabilities, or less disable than myself that locked by themselves.

28. The facts stated in paragraph 27 above evidences by itself that providing me a single-man cell here at MCF does not result in a fundamental alteration in the nature of its service, program, or activity, or in undue financial and administrative burden."

29. Paragraphs 3, 4, 5, 6, 7, 8, 9, 14, 16, 22, 25 and 26 shows that I am a qualified individual with disabilities under Title II of the ADA and the RA, and for or by

reason of my disabilities, I am being excluded from participation in or being denied the benefits of services, programs, or activities of the Muskegon Correctional Facility and Defendant Michigan Department of Corrections, a public entity of the state of Michigan, and is being subjected to intentional discrimination by reason of my disabilities.

30. I believe the Defendant MDOC's Statewide Offender-ADA Coordinator, Defendant Robin Gilbert, Played a role in intentionally discrimination against me by reason of my reason of my disability(ies) where she failed to seek an exemption to the ladder being appended to my assigned bunkbed, and instead sought to instigate a pre-emptive and retaliatory transfer of me by stating, "advising them" (The MCF Security Classification Committe), of my "request for review of [my] Placement," when I made no such request. See above Paragraph 20.

31. The same conduct that are being committed on me by defendants that violates Title II of the A.D.A also independently violates the Provision of the United States Constitution, Amendment XIV, section 1, which incorporated the Eight Amendment guarantee against cruel and unusual Punishment.

4u

32. The evidence will show that Defendant Mike Wilkinson could have reasonably accommodated my disabilities, but refused to do so. See above Paragraphs 22 through 26, and the failure to accommodate impeded my ability to participate in or benefit from Defendant MDOC's Muskegon Correctional Facility's services, programs, or activity of (1) getting in and out of my assigned bottom bunk without suffering daily with extreme pain by struggling to raise and bend my left leg at the knee to get it around the ladder that Defendant MDOC ordered to be appended to the bunkbed; (2) sleeping at night without suffering severe pain to my back and hips and tossing and turning that keeps me waking up all through the night; (3) sitting up at the end of my bunk to raise up without first having to bend forward to avoid the top bunk and most times suffering pain triggered from my pinched nerve(s) in my neck; and (4) to walk more easily in and out of my assigned room without having to cause myself excruciating pain from having to squeeze pass my bunkies, or to fear being assaulted again if I stumble over a bunky when coming in or going out of the room, because I will not be able to defend myself because of my disabilities. See

above Paragraph 16; and

33. Because the same conduct that violates Title II of the ADA violates the Eighth Amendment guarantee against cruel and unusual punishment, at least Defendant Mike Wilkinson is liable to me in his personal capacity, being deliberate indifferent to my unnecessary extreme pains and sufferings.

34. Defendant James Schiedner failed to accommodate my disabilities once he became aware of it through the Step II grievance that I wrote, but was rejected, by the Step I grievance Coordinator, and the warden, Defendant Schiedner; because the law, not the grievance Procedure, governs the Warden's conduct and duties, and Defendant Schiedner is not free to walk pass a dying man, sort of speak, merely because of an imperfect grievance where the merit stands out. The warden, Defendant Schiedner, was deliberate indifferent to my accommodation needs and acquiesed to Defendant Wilkinson conduct of refusing to accommodate my disabilities. See above paragraphs 13 and 17.

IMMINENT DANGER.

35. Defendant Mike Wilkinson's failure to accom-

4W

modate my disabilities has me in imminent danger of suffering serious physical injury(ies) that includes (1) daily suffering with extreme pain to my knee up to my hip (left hip) and the bottom left side of my lower back and around the inside of my left leg and groin into my hernia, see above paragraph 10; (2) damage to the cartilage in my knees and it breaking off inside my knees causing additional pain and my knees to lock in the wrong position; (3) falling when trying to walk with pains and crippling and seriously injuring myself in a number of ways, including additional injuries to nerves and muscles to my body; after having just struggled ~~struggling~~ to get my leg to bend around the ladder that is appended to my assigned bunkbed so that I could get out of bed; and or (4) stumbling over on my bunky and getting assaulted by my bunky for it and my disabilities not allowing me to defend myself; in addition to me losing the protection of my statutory right.

36. It has been about five (5) month since my referral was made to MCF Health Care Service and

4X

Defendant Mike Wilkinson for accommodating my disabilities, which take only an hour or less in a day to do, except for Defendant Wilkinson's predisposition to refuse me accommodation on November 19, 2024, two (2) days prior to the referral to accommodate me was made to him on November 21, 2025.

Dated: April 9, 2025

Rickey Hawthorne

4y

IV. **Relief**

State briefly and precisely what you want the court to do for you.

I want the Court to issue me a **Preliminary/Permanent injunction** directing/ordering the defendants to **(1)** remove the ladder from my assigned bunkbed, **(2)** raise the top bunk up or provide me a single bed, **(3)** provide me a special mattress that would aid in reducing the pain to my back and hips, **and (4)** turn my current room/cell into a single-man cell; **and (5)** award me damages for intentional discrimination, and damages from Def. Wilkinson in personal capacity for unnecessary pains and sufferings. **See Additional Page.**

V. **Notice to Plaintiff Regarding Consent**

In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, you are hereby notified that the United States magistrate judges of this district court may, upon your consent, conduct any or all proceedings in this case, including a jury trial and entry of a final judgment. If you consent, any appeal from a judgment entered by a magistrate judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of a district court.

Magistrate judges have greater flexibility in their schedules than district judges, who have heavy criminal caseloads that take priority over civil trials. Accordingly, the magistrate judges are generally able to schedule prisoner civil rights cases for jury trial much sooner, and they are able to provide firm trial dates. Magistrate judges are experienced trial judges who handle a great number of prisoner civil rights cases.

Your decision to consent to the dispositive jurisdiction of a United States magistrate is entirely voluntary. If you do not consent to a magistrate judge, the case will be randomly assigned to a district judge. The magistrate judge already assigned to this case would continue to decide all pretrial matters and would handle all dispositive motions by report and recommendation.

Please check **ONE** box below to indicate whether you voluntarily consent to proceed with a United States magistrate judge or if you would instead prefer that the case be assigned to a district judge.

☒ I hereby voluntarily consent to the United States magistrate judge conducting all proceedings in this case, including entry of a final judgment and all post-judgment matters.

☐ I request that this case be assigned to a district judge.

April 9, 2025
**Date**

Richard Hawthorne
**Signature of Plaintiff**

**NOTICE TO PLAINTIFF(S)**

The failure of a *pro se* litigant to keep the court apprised of an address change may be considered cause for dismissal.

(W.D. Mich. Form – Last Revised: September 2021)

# VERIFICATION

I have read the foregoing complaint and hereby Verify that the matters alleged therein are true, except as as to matters alleged on information and belief, and, as to those, I believe them to be true. I declare under Penalty of Perjury that the foregoing is true and correct.

Executed at Muskegon, Michigan on April 9, 2025.

Rickey Hawthorne

5A

Rickey Hawthorne, #180295
Muskegon Correctional Facility
2400 S Sheridan Drive
Muskegon, Michigan 49442-6298

TO:



US POSTAGE IMI PITNEY BOWES

ZIP 49442     $ 010.05⁰
02  4W
0000386200 APR  11  2025

Clerk of The Court
U.S. District Court
399 Federal Building
110 Michigan Street, NW
Grand Rapids, Michigan 49503