UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICKY HAWTHORNE #180295,

        Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al.,

        Defendants.

_____/

Hon. Hala Y. Jarbou

Case No. 1:25-cv-00416

## <u>REPORT AND RECOMMENDATION</u>

This matter is before the Court on Defendants Michigan Department of Corrections (MDOC) and Wilkinson's Motion for Summary Judgment. (ECF No. 24). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be granted and this action be terminated.

## <u>BACKGROUND</u>

Plaintiff is presently incarcerated with the MDOC at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan, where the alleged events at issue occurred. Plaintiff initiated this action against the MDOC and three MDOC employees. (ECF No. 1). The Court screened out two Defendants. (ECF Nos. 5, 6). At this juncture, the following claims remain in the case against Defendants Wilkinson and MDOC: (i) Eighth Amendment claims under Section 1983 against Defendant Wilkinson in his individual capacity and his official capacity seeking injunctive relief;

and (ii) Americans with Disabilities Act (ADA) and Rehabilitation Act (RA) claims against Defendant MDOC.   (*Id.*).

In his complaint, Plaintiff alleges the following regarding his claims against Defendants Wilkinson and MDOC.   (ECF No. 1).   Plaintiff suffers from back, neck, hip, leg, and knee ailments, causing him limitations in bending, standing, and walking. (ECF No. 1, PageID.9).   Plaintiff shares a cell and sleeps on the bottom bunk.   (ECF No. 1, PageID.11).   The bunk has a ladder affixed to the middle of it that prevents Plaintiff from swinging his legs when he gets in and out, and maneuvering around the ladder causes Plaintiff pain in his neck, back, hip, and legs.   (ECF No. 1, PageID.11-13).

On October 8, 2024, Plaintiff submitted a healthcare request, explaining the above ailments and requesting that something be done about his mattress and the bunk ladder. (ECF No. 1, PageID.15-16).   A non-party nurse responded that the healthcare staff could not do anything about his mattress, bunk, or ladder.   (*Id.*).   On October 17, 2024, Plaintiff filed Grievance MCF-2024-10-1000-28C against the nurse on the matter. (ECF No. 1, PageID.16).   At some point between October 17, 2024, and October 29, 2024, Plaintiff spoke with Defendant Wilkinson "regarding [Plaintiff's] disabilities and need for reasonable accommodations that included a special mattress to help relieve [Plaintiff] of the pains to [his] back and hips."   (ECF No. 1, PageID.17).   Plaintiff alleges that Defendant Wilkinson said that he was "aware of [Plaintiff's] disabilities, but that it is now a custody issue that [Plaintiff had] to take up with custody."   (*Id.*).

-2-

On October 29, 2024, Plaintiff submitted an "Offender ADA Reasonable Accommodation Request/Appeal Form, CSJ-562, setting forth [Plaintiff's] medically documented disabilities and need for a single-man cell and other accommodations," "to the worksite offender ADA coordinator." (ECF No. 1, PageID.18). On November 19, 2024, non-parties April McLaughlin, Mitchell Keys, and Plaintiff's prison counselor, along with Defendant Wilkinson and an unidentified official, "stood a distan[ce] from [Plaintiff's] cell/door looking into the room/cell." (ECF No. 1, PageID.18). Plaintiff states that the door was open, and he "could hear this group discussing only the ladder that was append [sic] to [Plaintiff's] assigned bunkbed." (ECF No. 1, PageID.18-19). At some point, "Defendant Wilkinson came into the room," and "stated, 'Let me be straight; you're not getting the top bunk raised; you're not getting a special mattress; the ladder stays on the bunk; and in no way will you be getting a single-man cell.'" (ECF No. 1, PageID.19). In response, Plaintiff told Defendant Wilkinson that Plaintiff had "seen healthy prisoners and prisoners with lesser disabilities than what [Plaintiff] suffer[s] . . . get a single-man cell." (*Id.*)

The next day, Plaintiff submitted a grievance regarding Defendant Wilkinson's statements on the prior day. (ECF No. 1, PageID.20). At some point between November 21, 2024, and December 3, 2024, Plaintiff "learned from the statewide ADA coordinator for Defendant MDOC and the worksite offender[] ADA coordinator that Defendant Mike Wilkinson could have reasonably accommodated [Plaintiff's] disabilities, but refused to do so." (ECF No. 1, PageID.21). The "Statewide Offender

ADA-Coordinator's response [indicated that] '[t]he coordinator's actions and referral for the prisoner to follow up with healthcare was and is the appropriate action and the proper avenue for the offender.' " (ECF No. PageID.22).

Defendants Wilkinson and MDOC now move for summary judgment on exhaustion grounds. (ECF No. 24). Plaintiff responded to Defendants' motion. (ECF No. 42). The Court finds that oral argument is unnecessary. *See* W.D. MICH. LCIVR 7.2(d).

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action regarding prison conditions under 42 U.S.C. § 1983 must first exhaust his administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). This obligation only extends, however, to such administrative remedies as are available. *Ross v. Blake*, 578 U.S. 632, 642 (2016) (a prisoner "must exhaust available remedies but need not exhaust unavailable ones").

Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA," which the defendant bears the burden of establishing. *Ibid*.

With respect to what constitutes proper exhaustion, the Supreme Court has stated that the PLRA exhaustion requirement requires "proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

-4-

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner must attempt to resolve the issue with staff, unless prevented by circumstances beyond his control, or the issue falls within the jurisdiction of Internal Affairs. MDOC Policy Directive 03.02.130 ¶ W (Oct. 21, 2024). The prisoner must attempt to resolve the matter within two days of becoming aware that there exists a grievable issue. (*Id.*).

If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance, but such must be submitted within five business days after attempting to resolve the matter with staff. MDOC Policy Directive 03.02.130); ¶ CC (Oct. 21, 2024). The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." MDOC Policy Directive 03.02.130 ¶ Y (Oct. 21, 2024).

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. MDOC Policy Directive 03.02.130 ¶ JJ (Oct. 21, 2024). If the prisoner is dissatisfied with the

Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III.   MDOC Policy Directive 03.02.130 ¶ NN (Oct. 21, 2024).

### I. Defendant MDOC

Defendants argue that Plaintiff did not name the MDOC in any relevant grievances that he pursued through Step III.   (ECF No. 25, PageID.220).   In response, Plaintiff does not point to any provision of the MDOC grievance policy generally forbidding him from exhausting claims against the MDOC, nor does he contend that he was otherwise prevented from doing so.   (ECF No. 42).   Although this Court has held that summary judgment on the basis of exhaustion is not appropriate as to the MDOC itself, *see Annabel v. Mich. Dep't of Corr.*, No. 1:18-CV-914, 2020 WL 919700, at \*1 (W.D. Mich. Feb. 26, 2020), the Sixth Circuit has more recently rejected the proposition that the MDOC grievance process is generally unavailable for institutional actors.   *See Kitchen v. Snyder,* No. 20-1936, 2021 WL 4470032, at \*3-4 (6th Cir. June 23, 2021); *see also Miles v. Michigan*, No. 2:23-CV-31, 2024 WL 1200182, at \*12 (W.D. Mich. Feb. 20, 2024).   Accordingly, Defendant MDOC has met its burden to establish that Plaintiff failed to exhaust his administrative remedies against it.   *See Rosencrantz v. Schmalbach*, No. 1:24-CV-886, 2025 WL 4082253, at \*3 (W.D. Mich. Dec. 26, 2025) ("It is well understood that if a prisoner identifies by name a specific individual in a Step I grievance, that grievance can serve to exhaust claims only as to the individual named in the Step I grievance.").

### II. Defendant Wilkinson

In support of their motion for summary judgment, Defendants Wilkinson and MDOC provide evidence that Plaintiff pursued only one grievance through Step III about the alleged events that names Defendant Wilkinson: Grievance MCF-24-11-1113-28I.[1] (ECF No. 25-3, PageID.246-50).

Grievance MCF-24-11-1113-28I does not establish that Plaintiff has properly exhausted his remaining claims against Defendant Wilkinson.   On November 20, 2024, Plaintiff submitted Grievance MCF-24-11-1113-28I, alleging that, the day before, Defendant Wilkinson visited his cell with the ADA coordinator, the assistant ADA, and an unidentified male regarding an accommodation request form that Plaintiff submitted. (ECF No. 25-3, PageID.249).   Plaintiff alleges that Defendant Wilkinson "stepped into [Plaintiff's] room" and stated to him, "Let me be straight, you're not getting the top bunk raised up; you're not getting any special mattress; the ladder stayed on the bunk; and in no way you're getting a single-man cell under any circumstances."   (*Id.*).   Plaintiff further asserted that Defendant Wilkinson "originally" told him that "this was a custody issue" and that "he spoke as if he ha[d] already decided [Plaintiff's] request and denied

---

[1] To exhaust a claim, *inter alia*, the grievance must identify an individual and match the issues in the complaint.   *See Rosencrantz*, No. 1:24-CV-886, 2025 WL 4082253, at *3 ("It is well understood that if a prisoner identifies by name a specific individual in a Step I grievance, that grievance can serve to exhaust claims only as to the individual named in the Step I grievance."); *see also Smith v. Washington*, No. 24-12652, 2025 WL 2947014, at *4 (E.D. Mich. Aug. 29, 2025) ("To exhaust a claim under the PLRA, an incarcerated person's grievance claim must match the issue(s) found in the individual's § 1983 complaint.").

them." (*Id.*).   This Step I grievance was rejected for two reasons: (1) Plaintiff made "[n]o attempt to resolve" his grievance with Defendant Wilkinson before filing the grievance, and (2) Plaintiff asserted "multiple issues" in the single grievance.    (ECF No. 25-3, PageID.249-50).   Plaintiff appealed to Step II, in which the rejection was upheld.   (ECF No. 25-3, PageID.247-48).   Plaintiff also appealed to Step III, but the rejection was again upheld.    (ECF No. 25-3, PageID.246-47).

Defendants argue that this grievance was properly rejected.   The Court agrees. A grievance may be rejected if it contains, *inter alia*, "multiple unrelated issues," MDOC Policy Directive 03.02.130 ¶ P(1) (Oct. 21, 2024), or if

> [t]he grievant did not attempt to resolve the issue with the staff member involved prior to filing the grievance unless prevented by circumstances beyond their control or if the issue falls within the jurisdiction of Internal Affairs in the Office of Executive Affairs.   An attempt to resolve Health Care grievances regarding routine care is accomplished by submitting a Health Care Request form (CHJ-549) to the facility Health Care staff as directed in PD 03.04.100 "Health Services."

MDOC Policy Directive 03.02.130 ¶¶ P(4) (Oct. 21, 2024).   Plaintiff argues that his statement in response to Defendant Wilkinson refusing his requests was his attempt to resolve the issue.   (ECF No. 42, PageID.386).   According to his complaint, Plaintiff merely stated, "I have seen healthy prisoners and prisoners with lesser disabilities than what [Plaintiff] suffer[s] with get a single-man cell"; asked Defendant Wilkinson's role in Plaintiff's accommodation request, and reminded Defendant Wilkinson that he previously told Plaintiff "it was a custody issue."    (ECF No. 1, PageID.19).   Regardless,

-8-

the rejection of this grievance for either given reason is not unreasonable, and Plaintiff

has failed to demonstrate that the rejection of this grievance was improper.[2]

Plaintiff has not provided sufficient evidence to create a genuine issue of material

fact.   In response to Defendants' motion, Plaintiff argues that Grievance MCF-24-10-

1000-28C, which alleges that an MCF nurse denied his inquiry about accommodations,

serves to exhaust his claims, but the grievance does not name Defendant Wilkinson.

(ECF No. 42-2, PageID.396-401).   Accordingly, the grievance cannot serve to exhaust

any claims against Defendants Wilkinson.   *See Rosencrantz v. Schmalbach*, No. 1:24-

CV-886, 2025 WL 4082253, at *3 (W.D. Mich. Dec. 26, 2025) ("It is well understood that

if a prisoner identifies by name a specific individual in a Step I grievance, that grievance

can serve to exhaust claims only as to the individual named in the Step I grievance.").

Accordingly, Defendant Wilkinson has satisfied his burden to show that Plaintiff failed

to properly exhaust the claims against him, and the undersigned recommends that

Defendants' motion be granted.

---

[2] To the extent that Plaintiff should have submitted a healthcare request form
under P(4) of the MDOC Policy Directive, Plaintiff admitted in his Step II appeal form
that he failed to do so regarding the incident with Defendant Wilkinson.   (ECF No. 25-
3, PageID.247).   Additionally, to the extent that Plaintiff argues that he exhausted his
non-grievable ADA accommodation appeal, "the relevant consideration is whether
plaintiff exhausted a grievance under Policy Directive 03.02.130 prior to filing this
lawsuit."   *Diemond v. Michigan Dep't of Corr.*, No. 1:20-CV-473, 2021 WL 2942604, at
*4 (W.D. Mich. May 25, 2021).

## CONCLUSION

For the reasons articulated herein, the Court recommends that Defendants' Motion for Summary Judgment (ECF No. 24) be granted and this action be terminated. For the same reasons the undersigned makes these recommendations, the undersigned finds that an appeal of such would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the undersigned further recommends that an appeal of this matter by Plaintiff would not be in good faith.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Dated: March 19, 2026                     /s/ Phillip J. Green
                                          PHILLIP J. GREEN
                                          United States Magistrate Judge

-10-